UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR: 05-453-01 (RCL) |
| | : | |
| MARTHA K. DINAN, | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing. As specified in the plea agreement between the defendant and the United States, the Government is requesting a sentence of eight months, which is at the low end of the applicable Sentencing Guidelines range of eight to fourteen months incarceration.

**I.  Factual Background**

Before she was caught stealing money, Dinan was employed by the American Health Care Association as the Director of Conventions and Meeting Services. During her tenure at AHCA, which lasted from April, 2003, until she was fired in May, 2005, Dinan held a position of responsibility: she organized and coordinated meetings and other events on behalf of a significant federation of health care organizations. To fulfill her job duties, Dinan was granted the privilege of a corporate American Express card. Dinan was supposed to use this credit card to purchase items

1

from vendors to stage conventions and meetings but, instead, she charged a variety of personal luxury items, such as spa services and restaurant meals to AHCA. Additionally, Dinan presented phony invoices from a company called DEMM to AHCA for payment. On the invoices, Dinan represented that DEMM was a "specialist in quality staging and theatrical productions." She made this representation to make the invoices appear legitimate. As Dinan knew, no such staging or production work had been performed. Dinan also induced AHCA to give her the checks instead of mailing them to DEMM in the ordinary course of business by telling AHCA personnel that she would personally remit the checks to DEMM. Dinan then deposited the checks into her personal bank account. By the time her fraud scheme was discovered, Dinan had stolen $64,619.59 from AHCA.

## II.   Sentencing Guidelines Calculation

The parties have agreed that the following is a correct calculation of all relevant Sentencing Guideline factors:

| | | |
|---|---|---|
| 2B1.1(a) | Base Offense Level | 7 |
| 2B1.1(b)(E) | Loss greater than $30,000 | 6 |
| 3E1.1 | Acceptance of Responsibility | (-2) |
| TOTAL | | 11 |

With a base offense level of 11 and a criminal history category of I, Dinan is exposed to a sentence within the range of eight to fourteen months' incarceration. Dinan also agreed in the plea agreement that a sentence within this range was reasonable.

## III.  The Impact of Booker on The Defendant's Sentence

In <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory

application of the United States Sentencing Guidelines violated the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004) and consequently invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1). Booker, 125 S. Ct. at 764. The remaining statutory scheme, set forth in Title 18, United States Code, Section 3553(a), states that a court should consider the following factors in imposing a sentence on a criminal defendant:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence, as reflected in a) the seriousness of the offense and need for just punishment and respect for law; b) promotion of general deterrence; c) protection of the public; and d) providing for educational, medical and other needs of the defendant;

(3) the types of possible sentences;

(4) the range established for the conduct under the Guidelines;

(5) the policies promulgated by the Sentencing Commission;

(6) ways to fashion a sentence that promote uniformity in sentencing for like offenses and offenders; and

(7) victim restitution.

Although it invalidated the mandatory obligation of the Sentencing Guidelines, the Booker Court importantly and expressly upheld the remainder of the Guidelines as an appropriate benchmark for courts to look to in determining a reasonable sentence for the defendant before it. Booker, 125 S. Ct at 767 ("The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."). Indeed, the statutory obligation remains

for a court wishing to impose a sentence outside the applicable range to state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that prescribed by the Guidelines. See 18 U.S.C. § 3554(c)(2). The sentence will then be subject to review by a Court of Appeals for "reasonableness." Booker, 125 S. Ct. at 764-66.

Accordingly, a sentence within the Guidelines will, in most, if not all, cases be inherently reasonable and will have adequately taken into account each of the factors enumerated in Section 3553(a). Indeed, the Sentencing Commission formulated the Guidelines only after canvassing prior sentencing practices and identifying and assigning weights to all of the factors – both aggravating and mitigating – that judges traditionally used in determining an appropriate sentence. See United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); see also 28 U.S.C. 994(m) (requiring the Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases"). In light of the Booker Court's continued reliance on the Guidelines, and its history in the calculation of the applicable ranges, the government contends that, absent unusual circumstances under one of the other Section 3553 factors, a defendant's sentence should fall within the Guidelines range as determined by this Court.

**IV.    Additional Sentencing Factors Under Section 3553(a)**

A consideration of the additional sentencing factors under Section 3553(a) supports the conclusion that a sentence within the Guidelines range is appropriate in this case. As provided in greater detail in the Presentence Investigation Report, the defendant had the benefit of a largely

4

stable and supportive home with a mother with whom she has a close relationship. Although Dinan claims to now suffer from depression and a gambling addiction, there is no documentation of any mental or emotional problems. PSR, at pages 8-9, ¶¶ 37-41. Unlike many defendants who come before this Court for sentencing, the defendant had a secure, financially rewarding job at a reputable institution at the time she committed the instant offense. She was making $80,000 a year, and was a trusted and valued employee. Although not an extravagant salary, the money the defendant earned was certainly enough to meet her basic needs. Indeed, the PSR shows a significant positive monthly cash flow. See PSR at ¶ 52. Greed, and only greed, is what motivated the defendant to commit the offense that she did. There are no mitigating or exacerbating circumstances, as set forth in the Presentence Investigation Report, to take into account in this case.

In light of the defendant's personal circumstances, the nature and seriousness of the offense, the range of eight to fourteen months' imprisonment is a reasonable and appropriate sentence in this case – one that takes into account all of the factors enumerated in Section 3553(a). As this Court is aware, that range, which reflects compiled data on sentencing over time and geography, properly incorporates the need to promote uniformity in sentencing for comparable offenses and comparably situated offenders. For all of the foregoing reasons, the government respectfully recommends that

this Court impose a sentence of incarceration at the lower end of the guidelines range as set forth above, in the Presentence Report, and in the plea agreement.

                                         Respectfully submitted,

                                         KENNETH L. WAINSTEIN
                                         UNITED STATES ATTORNEY

By: _____
      SARAH T. CHASSON
      ASSISTANT U.S. ATTORNEY
      555 4th Street, N.W.
      Washington, D.C. 20530
      (202) 514-7248